IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00196-WYD-CBS

LOUIS E. TILLMAN,
    Plaintiff,
v.

TIMOTHY R. MURPHY, and
MHC KENWORTH,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendants' Motion for Summary Judgment (Doc. # 67) and accompanying Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Doc. # 68), filed on March 2, 2012. Pursuant to the Order of Reference dated February 24, 2011 (Doc. # 10) and the memorandum dated March 2, 2012 (Doc. # 69), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Tillman's Response (filed March 27, 2012) (Doc. # 71), the affidavit and exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Proceeding *pro se*, Mr. Tillman commenced this lawsuit *in forma pauperis* on or about January 26, 2011. (*See* Docs. # 1, # 2, # 3). At the court's direction, Mr. Tillman filed his Amended Complaint ("AC") on February 10, 2011. (*See* Docs. # 6, # 7). Mr. Tillman alleges that the court has jurisdiction pursuant to Title 42 U.S.C. §§ 1981, 1983, 1985(3), and 28 U.S.C. § 1343. (*See* Doc. # 7 at 2 of 3). Mr. Tillman alleges that he took his model W900 Kenworth commercial truck to the MHC Kenworth servicing dealerships in Grand Junction and Denver, Colorado in January and February of 2010. (*See* Doc. # 7 at 2-7 of 13). Mr. Tillman alleges that between January 24, 2010 and February 22, 2010, he repeatedly took his truck to the MHC Kenworth servicing dealerships in Grand Junction and Denver for repairs and that, due to his

1

race (African American), it was never properly repaired.  (*See id.*).  He alleges that when he attempted to purchase another truck from the MHC Kenworth dealership in Denver on February 12, 2010, he was refused based on his race.  (*See* Doc. # 7 at 6 of 13).  He alleges that certain employees of Defendants considered him "not good enough to own a W900L" because of his race, and "pr[o]ceeded to sabotage Plaintiff's engine" and damage his truck "through ineffective servicing and repair." (*See* Doc. # 7 at 4 ¶ 11, 6 ¶¶ 27-28, 9-10 of 13).  He alleges that Defendants breached "the written and implied contract by failing to deliver adequate and/or qualified service technician to repair or make operable" his vehicle.  (*See id.* at 12 of 13).  Mr. Tillman brings three claims for: (1) "illegal discrimination practices because of [his] race", in violation of "42 USC 1981 and 1983," (2) "conspiracy to interfere with civil rights" in violation of 42 U.S.C. § 1985(3), and (3) breach of "a service for repair contract."  (*See* Doc. # 7 at 9-12 of 13).  Mr. Tillman seeks "compensatory damages, consequential damages, punitive damages, expert witness fees, prejudgment interest and post-judgment interest." (*See* Doc. # 7 at 13 of 13).

II.     Standard of Review

    Defendants move for summary judgment on all claims in the AC.

    Summary judgment is proper under Fed. R. Civ. P. 56(c) when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In applying the standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. To defeat a properly supported motion for summary judgment, there must be evidence upon which the jury could reasonably find for the plaintiff. Judgment as a matter of law is improper unless the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ as to the conclusion. Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial.

*Lee v. Board of County Com'rs of Arapahoe County, Colo.*, 18 F. Supp.2d 1143, 1156 (D. Colo. 1998) (internal quotation marks and citations omitted).

III.     Analysis

A.     Claim for Violation of 42 U.S.C. § 1983

In his First Claim for Relief, Mr. Tillman alleges "illegal discrimination practices because of [his] race", in violation of "42 USC 1981 and 1983." (*See* Doc. # 7 at 9 of 13). Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). "Plaintiffs alleging a violation of § 1983 must demonstrate they have been deprived of a right secured by the Constitution and the laws of the United States, and that the defendants deprived them of this right acting under color of law." *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008). Section 1983 does not impose liability in the absence of action taken under color of state law. *Adickes*, 398 U.S. at 150. *See also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'"). If the conduct of Defendants does not qualify as state action, then the inquiry into § 1983 liability ends. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). Purely private acts are not considered acts under color of state law unless that conduct is furthered by actual or purported state authority. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (court must determine whether private party's "conduct has sufficiently received the imprimatur of the State so as to make it 'state action' for purposes of the Fourteenth Amendment").

The evidence indicates that Defendant Murphy is a private citizen who is "President of Colorado Kenworth, Inc., doing business as MHC Kenworth, MHC Kenworth – Denver   and

3

MHC Kenworth – Grand Junction, the entity to which Plaintiff refers in his complaint." (*See* Affidavit of Timothy R. Murphy, Exhibit A to Motion (Doc. # 68-1) at ¶ 1). Defendant MHC Kenworth is "a private, for-profit business." (*See id.*). Nowhere in the AC has Mr. Tillman alleged violation of a constitutional or federal right by a person acting "under color" of a state "statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. *See Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) ("To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes.") (citation omitted).

In his Response, Mr. Tillman argues that "[i]n the state of Colorado the Better Business Bureau is a state actor, . . . MHC Kenworth is a top tier member of the 'BBB' in good standings [sic]. . . . Thus, the 'BBB' is the sole consumer advocate office of the state of Colorado, which the state action requirement is satisfied as 1983 color of law requirement [sic]." (*See* Doc. # 71 at 9 of 28). However, "a symbiotic relationship between defendants and the governmental authorities," a better business bureau and other organizations, did not show state action or action under color of state law. *Ve-Ri-Tas, Inc. v. Advertising Review Council of Metropolitan Denver, Inc.*, 567 F.2d 963, 964-65 (10th Cir. 1977). Mr. Tillman neither alleges facts nor presents any evidence on the relationship between the BBB and the Defendants.

Mr. Tillman also argues that "[a] private actor can engage in state action is by acting in concert with state or local officials [sic]." (*See* Doc. # 71 at 9 of 28). "State action is also present if a private party is a willful participant in joint action with the State or its agents." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (1995) (internal quotation marks and citations omitted). "[T]he focus of this test is not on long-term interdependence between the state and a private entity. Instead, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* Mr. Tillman alleges no facts and presents no evidence that the Defendants and the State or its agents acted in concert to effect a specific deprivation of his constitutional rights

As Mr. Tillman has not alleged or demonstrated facts sufficient to suggest that Defendants

were functioning in any capacity other than as private actors, summary judgment is properly granted on his § 1983 claim.

B.   Claim for Violation of 42 U.S.C. § 1981

Title 42 U.S.C. § 1981 "ensures, . . . that persons of all races shall have equal rights to make and enforce contracts." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000). Making and enforcing contracts is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "The lower federal courts have found a broad variety of claims of contractual discrimination cognizable under § 1981." *Patterson v. McLean Credit Union*, 491 U.S. 164, 210 (1989), *overruled on other grounds by* 42 U.S.C. § 1981(b). "[T]he law prohibits racial discrimination in contracting for anything by anyone." *Broomes v. Schmidt*, No. CIV.A. 95-4845, 1996 WL 229369, at * 3 (E.D. Pa. 1996).

"A § 1981 . . . plaintiff must prove by a preponderance of the evidence that the defendant intentionally discriminated against him or her on the basis of race." *Juarez v. ACS Government Solutions Group, Inc.*, 314 F.3d 1243, 1245 (10th Cir. 2003) (internal quotation marks and citation omitted). Such proof may come from "either direct evidence of discrimination (*e.g.*, oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (*i.e.*, circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (citations omitted).

Direct evidence is "evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (internal quotation marks and citation omitted). "A plaintiff proves discrimination through direct evidence by establishing proof of an existing policy which itself constitutes discrimination." *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (internal quotation marks and citation omitted). Mr. Tillman alleges that his truck was not properly repaired and he was unable to purchase another truck because of his race. Mr. Tillman alleges that two unidentified mechanics, one in

Grand Junction and one in Denver, uttered racially hostile comments in his presence. (*See* Doc. # 7 at 4 of 13, ¶ 11, 6 of 13, ¶ 27, 9 of 13, ¶¶ 2, 5).  To prove that discriminatory comments are direct evidence of discrimination under § 1981, there must be some nexus between the alleged discriminatory statements and the failure to perform contractual obligations. *Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir.1999).  While the comments alleged are abhorrent, Mr. Tillman fails to establish the nexus between the remarks and his allegation that Defendants did not properly repair his truck and refused to sell him a new vehicle because of his race.  The evidence presented by Mr. Tillman consists of two isolated, disparaging comments made by unidentified employees, one in Grand Junction and one in Denver.  There is evidence in the record that Defendants were unaware that any employee made the comments. (*See* Doc. # 68-1).  Mr. Tillman presents no evidence to the contrary.  He does not present evidence that the two unidentified employees had decision-making authority over the mechanical work done on his truck or his purchase of another vehicle.  "Discriminatory comments made by an employee who does not possess decision-making capability are not sufficient to demonstrate a discriminatory animus on behalf of the employer." *Duhall v. Lennar Family of Builders*, 645 F. Supp. 2d 965, 974 (D. Colo. 2009).  "Statements which on their face are expressions of personal opinion, . . . can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff." *Stone*, 210 F.3d at 1136 (internal quotation marks and citation omitted).  Even assuming that the two racially hostile hearsay comments are admissible, Mr. Tillman does not establish with direct evidence that Defendants are liable for violation of 42 U.S.C. § 1981.

To the extent that Mr. Tillman relies on circumstantial evidence, the court applies the *McDonnell Douglas* burden shifting framework originally devised in the Title VII context, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), to evaluate whether he has demonstrated Defendants' discriminatory intent.  *See Baca v. Sklar*, 398 F.3d 1210, 1218 (10th Cir. 2005) (holding in racial discrimination suits, the elements of a plaintiff's claim for disparate treatment are the same whether brought under section 1981 or Title VII); *Perry*, 199 F.3d at

1135 ("While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981.") (citation omitted); *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) (allocation of burdens to prove intentional discrimination under Title VII applies equally to intentional discrimination claims brought under section 1981).

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden . . . of establishing a prima facie case of racial discrimination." *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case under section 1981, a plaintiff need only show: (1) he is a member of a protected class; (2) he attempted to contract for certain services; (3) he was denied the right to contract for those services; and (4) such services remained available to others outside the protected class. *White v. Denny's Inc.*, 918 F. Supp. 1418, 1424 (D. Colo. 1996) (citation omitted). "The elements of a prima facie case are flexible and are not intended to be applied rigidly." *Id.* (citation omitted). Once the plaintiff has established a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its employment action. *See McDonnell Douglas* at 802. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual. *See id.* at 804.

Assuming without specifically deciding that Mr. Tillman can meet the first three elements of a *prima facie* case, a fatal deficiency in Mr. Tillman's evidence is his failure to show that others outside the protected class were offered the services which he was allegedly denied. It is his burden to show comparable circumstances in order to support an inference of discriminatory intent. Mr. Tillman fails to allege or show that anyone from outside his protected class was similarly situated to him or was treated more favorably. Because Mr. Tillman fails to support his initial burden to establish a prima facie case, Defendants are entitled to summary judgment on his § 1981 claim.

Nevertheless, the court proceeds to consider the merit of Mr. Tillman's § 1981 claim assuming, *arguendo*, that he could meet the *prima facie* elements of his claim. The court alternatively concludes that even if Mr. Tillman could support a *prima facie* case of intentional


discrimination, he fails to meet his ultimate summary judgment burden.  To the extent that Mr. Tillman relies on two racially hostile comments made by unidentified mechanics in Grand Junction and Denver, the evidence is insufficient to demonstrate that the Defendants intentionally discriminated against him because of his race.  The two hearsay statements by unidentified mechanics do not address Defendants' evidence that they were not aware of any such statements.  Mr. Tillman has not presented evidence that the two unidentified employees had decision-making authority over the work done on his truck or his purchase of another vehicle.  Mr. Tillman does not establish the Defendants' intent by the unidentified mechanics' hearsay statements.

Mr. Tillman alleges that Defendants refused to sell him another truck because of his race.  He alleges that he "heard someone in the meeting [say] that it was not in the best interest of the image of Kenworth for a black man to own a W900." (*See* Doc. # 6 of 13).  Defendants present evidence that Mr. Tillman was unable to purchase an alternate vehicle solely because he could not pay cash or obtain the financing necessary to purchase any vehicle, and not based on his race.  Mr. Tillman does not specifically address this evidence.  This overheard hearsay comment by an unidentified person is not competent evidence of race-based animus on the part of the Defendants.  Mr. Tillman does not present evidence of the identity or decision-making authority of the alleged speaker regarding the sale of another truck to him.  Even assuming that the hearsay comments were admissible, the evidence presented by Mr. Tillman does not support an inference that his truck was not properly repaired and he was not sold a new vehicle as a result of Defendants' alleged racism.  Mr. Tillman does not present indirect evidence sufficient to hold Defendants liable for discrimination under 42 U.S.C. § 1981.  Summary judgment is properly granted in favor of Defendants on Mr. Tillman's First Claim for Relief for violation of Section 1981.

D.     Claim for Violation of 42 U.S.C. § 1985(3)

Mr. Tillman's Second Claim for Relief alleges "conspiracy to interfere with civil rights" in

violation of 42 U.S.C. § 1985(3). (*See* Doc. # 7 at 10 of 13). Section 1985(3) proscribes any conspiracy to deprive persons of rights or privileges. Section 1985(3) specifically prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." A claim of conspiracy under § 1985(3) requires a deprivation of some right or privilege created by the Constitution or other provisions of federal law.

A plaintiff must state facts to demonstrate that there is a conspiracy, which is defined as "the combination of two or more persons acting in concert," *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990), so that a plaintiff therefore must allege "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *Id.* at 1231. *See also Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) ("The participants in the conspiracy must share the general conspiratorial objective . . . [t]o demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences.") (internal quotation marks and citation omitted).

Section 1985(3) is not a general federal tort law; it also requires that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). *See also Daigle v. Gulf State Utilities Co., Local No. 2286*, 794 F.2d 974, 978-79 (5th Cir. 1986) (§ 1985(3) requires some class-based invidiously discriminatory animus behind conspirators' actions). A plaintiff must show: (1) a conspiracy, motivated by racially discriminatory animus; (2) to deprive plaintiff of equal protection of the constitution or laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

First, Mr. Tillman has provided no facts to support an inference that a plan or joint action

existed between the Defendants.  As the basis of his § 1985(3) conspiracy claim, Mr. Tillman alleges that "throughout the service and repair process Defendant[s] caused damage through ineffective servicing and repair." (*See* Doc. # 7 at 10 of 13).  Mr. Tillman alleges that the MHC Kenworth servicing dealership in Grand Junction charged him for "unneeded and/or unwanted parts and labor" on or about January 24, 2010.  (*See* Doc. # 7 at 2, 10 of 13).  He alleges that the MHC Kenworth servicing dealership in Denver charged him for "unneeded parts and labor" on or about January 29, 2010 and February 4, 2010 through February 15, 2010.  (*See id.* at 5-6, 10 of 13).  Mr. Tillman fails to allege or demonstrate a meeting of the minds between the Defendants in January and February of 2010.  (*See* Doc. # 7 at 10 of 13).  Mr. Tillman does not allege or show that Defendants communicated about him.  The evidence in the record indicates that Defendant Murphy had no knowledge of Mr. Tillman or his dealings with any of Colorado Kenworth, Inc.'s service or sales departments and did not communicate with MHC Kenworth concerning Mr. Tillman until this civil action was filed.  (*See* Doc. # 68-1).  Mr. Tillman does not present evidence to the contrary.  In his Response, Mr. Tillman argues that while Defendant Murphy "did not know of the action of his employees at the moment of these" acts, "upon learning of these actions, Mr. Murphy became party to the conspiracy, in which he has sole discretion to prevent." (*See* Doc. # 71 at 7 of 28).  At best, Mr. Tillman's own argument suggests that Defendant Murphy had no contemporaneous knowledge of Mr. Tillman's dealings with Colorado Kenworth, Inc.  Mr. Tillman merely alleges "Defendant conspired," without presenting evidence of the identity of the specific members of a conspiracy or agreement and concerted action between Defendants in furtherance of a conspiracy.  (*See* Doc. # 7 at 10 of 13).  *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice.").  Mr. Tillman's allegations of a conspiracy are nothing more than conclusory allegations which are insufficient to demonstrate a conspiratorial nexus.  *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (conclusory allegations of conspiracy are insufficient to state a valid civil rights claim); *Benavidez v. Gunnell*,

722 F.2d 615, 618 (10th Cir. 1983) (noting that conclusory allegations of a conspiracy are not sufficient).

Even if on January 24, 2010 in Grand Junction and on February 12, 2010 in Denver, Mr. Tillman "over heard a mechanic saying to another mechanic a nigger don't deserve to own a W 9" and "heard one mechanic say to another that I was a uppity nigger that thinks he should be making all that money," Mr. Tillman nowhere alleges that Defendants agreed or conspired with these employees to deprive him of a right or privilege created by the Constitution or federal law. The evidence in the record shows that Defendants did not act in concert with any other person or entity to deprive Mr. Tillman of any constitutionally protected rights. (*See* Doc. # 68-1 at ¶ 4). As Mr. Tillman's claim for conspiracy is not pled with specificity or supported with specific evidence, summary judgment is properly granted on his Second Claim for Relief.

E.     Fourteenth Amendment Due Process

In his Response, Mr. Tillman states that "Defendants violated my Due Process as well as m[y] Fourteenth Amendment right by sabotaging my truck engine and hindering my ability to earn a living." (*See* Doc. # 71 at 9 of 28). The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, sec. 1. *See also Parratt v. Taylor*, 451 U.S. 527 (1981) (cause of action exists under § 1983 and the Fourteenth Amendment if a plaintiff has been deprived of property by state action without due process of law), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Because the Fourteenth Amendment "is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Mr. Tillman has not alleged or demonstrated state action.

Further, allegations that do not appear in the AC cannot be raised for the first time in a response to a dispositive motion. *See Blackmon v. U.S.D. 259 School Dist.*, 769 F. Supp. 2d 1267, 1267 (D. Kan. 2011) ("To the extent Plaintiff tried to assert additional or different claims

in her response to Defendant's motion to dismiss, those claims are not allowed."); *In re Qwest Communications Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (holding that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss"). To the extent that Mr. Tillman identifies in his Response the Fourteenth Amendment and due process as grounds for any of his claims, summary judgment is properly granted on any such claim.

F.    Claim for Breach of Contract

In his Third Claim for Relief, Mr. Tillman alleges the Defendants breached "the written and implied contract by failing to deliver adequate and/or qualified service technician to repair or make operable said vehicle." (*See* Doc. # 7 at 12 of 13). Title 28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same transaction or occurrence as the federal claims. To the extent that Mr. Tillman brings a state law claim, a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). As the court recommends that summary judgment be granted on Mr. Tillman's federal claims under §§ 1981, 1983 and 1985(3), the only claims over which this court could have had original jurisdiction, his supplemental state law claim for breach of written and implied contract may properly be dismissed.

Accordingly, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. # 67), filed on March 2, 2012 be GRANTED and judgment be entered on the Amended Complaint (Doc. # 7) in favor of Defendant and against Plaintiff, with each party to bear his or its own costs and attorney fees.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 5th day of September, 2012.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge